# United States Court of Appeals
# for the Fifth Circuit

———————————

No. 25-40024

———————————

United States Court of Appeals
Fifth Circuit

**FILED**
March 17, 2026

Lyle W. Cayce
Clerk

POLARIS ENGINEERING, INCORPORATED,

*Plaintiff—Appellee/Cross-Appellant*,

*versus*

TEXAS INTERNATIONAL TERMINALS, LIMITED,

*Defendant—Appellant/Cross-Appellee*,

WESTCHESTER FIRE INSURANCE COMPANY,

*Defendant—Appellee*.

———————————————————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 3:21-CV-94

———————————————————————

Before SMITH, WIENER, and HIGGINSON, *Circuit Judges*.

JERRY E. SMITH, *Circuit Judge*.[*]

　　Polaris Engineering sued Texas International Terminals ("TXIT") for breach of contract and quantum meruit following Polaris's construction of a petroleum refining facility. TXIT counterclaimed on breach of contract

———————————————

[*] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

and conversion. The district court granted partial summary judgment to Polaris on breach of contract, and a jury returned a verdict on damages for Polaris. We have reviewed the briefs, the record, and the applicable law and have heard oral argument. Because there is no reversible error, the judgment is, in all respects, affirmed.

I.

TXIT is a container port and logistics company in Galveston. Polaris is a Louisiana industrial engineering firm. They entered into three inter-related contracts for (i) construction of a new crude oil refining facility with a capacity of 50,000 barrels per day, (ii) construction of supporting infra-structure, and (iii) maritime delivery to and from the facility. The contract at issue had shifting obligations. After Polaris attained mechanical comple-tion of the project, TXIT had 21 days to start up the facility and issue a Notice of Stable Operations; thereafter, the obligation shifted back to Polaris to con-duct performance testing.

TXIT claims that it identified performance and safety issues, but it is undisputed that a Notice of Stable Operations was never issued. When TXIT insisted that Polaris bear the costs of performance testing, submitting a claim to Polaris's insurer, Westchester Fire Insurance Company, Polaris soon ter-minated the contract and sued TXIT for breach of contract or *quantum meruit* in the alternative. Polaris also brought claims for nonpayment of Change Orders or post-formation modifications to the contract. TXIT counter-claimed for breach of contract and conversion of certain dock equipment taken by Polaris.

Polaris moved for summary judgment on several issues of contract interpretation, which motion the district court granted in part. The court concluded that TXIT had breached a facility agreement twice as a matter of law. For the first breach, the court rejected TXIT's argument that its repre-

sentative's signature on a mechanical certificate did not demonstrate reasonable satisfaction of mechanical completion entitling Polaris to conduct performance testing.  For the second breach, the court rejected TXIT's preferred definition of "stable operations" as "operating at a 50,000 barrels-per-day rate" to prefer the ordinary meaning of "steady, consistent operations."  The court reasoned that, because the term "stable operations" was ambiguously defined in Section 10.2 and Appendix G—appearing both with and without the clarifying term 50,000 BPD—reading "stable operations" as having its own plain-language meaning "solve[d] both issues," or more clearly aligned meanings across the relevant contractual sections.  The district court decided that TXIT's operation of the Facility at 30,000 barrels per day qualified under the ordinary-meaning definition of stable operations.  The court therefore concluded that TXIT's refusal to certify a notice of stable operations, despite achieving qualifying operations, constituted a second breach.  On both breaches, the court reserved the issue of materiality to the jury.

Before submitting the remaining case to a jury, the district court granted TXIT's motion for judgment as a matter of law against Polaris's claim for lost profits, seeing it as barred by the contract's consequential damages waiver.

The jury returned a verdict favorable to Polaris, finding that although both parties had breached, TXIT breached first by refusing Polaris the opportunity to conduct performance tests on the facility.  The jury awarded Polaris some $23 million in damages, while awarding TXIT some $2 million in offsetting damages for conversion of the dock equipment.  The district court entered judgment of $20.8 million principal and $14.3 million interest against TXIT.

TXIT filed renewed motions for judgment as a matter of law under

No. 25-40024

Rule 50(b), for partial new trial under Rule 59, and to alter or amend the judgment under Rule 60, while Polaris moved for judgment as a matter of law and partial new trial. The district court denied all post-trial motions. TXIT appealed, and Polaris cross-appealed.

II.

We find no reversible error. In a diligent review of a voluminous and fact-intensive record, the district court made fair and reasonable rulings on liability and damages, both before and after trial. Texas law aims to give effect to the intent of the parties, and the judgment achieves that result. In particular, although the district court did not need to define stable operations in its ruling, we nonetheless affirm with respect to the court's treatment of the central issue and the jury verdict, because TXIT failed to issue the Notice of Stable Operations as required by the contract. And as for the materiality of the breach, none of TXIT's arguments to the contrary is availing. Finally, we do not find the verdict against the manifest weight of the evidence—a high bar for review.

AFFIRMED.